**TIPPECANOE COUNTY AREA PLAN COMMISSION, Defendant-Appellant,**

v.

**SHEFFIELD DEVELOPERS, INC., Plaintiff-Appellee.**

No. 2–1076A371.

Court of Appeals of Indiana, Fourth District.

Aug. 20, 1979.

Robert A. Mucker, Lafayette, for defendant-appellant.

John K. McBride, Lafayette, for plaintiff-appellee.

CHIPMAN, Presiding Judge.

Tippecanoe County Area Plan Commission (Plan Commission) appeals the trial court's order compelling it to approve a preliminary subdivision plat submitted by Sheffield Developer, Inc. (Developer) and raises the following issues:[1]

1. Did the trial court err in denying the Plan Commission's Motion to Dismiss and in assuming jurisdiction because no official or final action was taken by the Plan Commission?

2. Did the trial court exceed its scope of appellate review of an administrative decision?

3. Did the trial court fail to make a specific Finding of Fact that the proposed plat met § 4.33(b)(2) of the Tippecanoe County Subdivision Control Ordinance and was there sufficient evidence to sustain that Finding?

4. Was the trial court's Finding of Fact and Conclusion of Law that § 1.1 of the Subdivision Control Ordinance failed to set forth specific standards correct and sustained by the evidence?

We affirm.

## I. JURISDICTION

The Plan Commission contends the trial court erred in denying its Motion to Dismiss and in exercising jurisdiction over this case because no official or final action was taken by the fifteen member Plan Commission. While we agree with the premise that no official[2] or final[3] action

1. In its answer brief, the Developer seeks damages against the Plan Commission for this allegedly frivolous appeal pursuant to Ind. Rules of Procedure, Appellate Rule 15(G). The record falls short of a "strong showing of bad faith on the part of the [appellant]," we decline the invitation. *Anne v. State*, (1971) 256 Ind. 686, 274 N.E.2d 260, 261. *State v. Denny*, (1978) Ind.App., 377 N.E.2d 893, 896. Since we affirm in whole the trial court's judgment, however, the Developer will recover costs. A.R. 15(H).

2. Pursuant to IC 18–7–4–18, *infra*, the Plan Commission's failure to reach the requisite majority concurrence in any of the four hearings to either approve or disapprove the Developer's preliminary plat constituted no "official" action. *See Carpenter v. Whitley County Plan Commission*, (1977) Ind.App., 367 N.E.2d 1156 (construing the nearly identical provisions of IC 18–7–5–19 to condition "official" action on the concurrence by a "majority of the members present" to either approve or disapprove rather than a "majority of the Commission").

3. The procedure by which a developer obtains approval of a plat is governed by IC 18–7–4–56 to 64 and applicable Subdivision Control Ordinances. In Tippecanoe County, this procedure is divided into three stages. First, a developer must file an application for approval with the Executive Director of the Plan Commission. When the Director is satisfied that ordinance requirements are met, the full Plan Commission conducts a hearing on the proposed subdivision plat. Following preliminary approval the plat is then *resubmitted* to the Plan Commission for *final* approval. The Developer in the case at bar received a favorable recommendation from the Executive Director but was unable to obtain *preliminary* approval from the Plan Commission. Pursuant to § 4.41 of the Tippecanoe County Subdivision Control Ordinance, therefore, the suit upon which this appeal is based concerns an interim, not final, step in the plat approval process: "The approval of a preliminary plat by the Commission is strictly tentative, involving merely the general acceptability of the layout submitted."

was taken by the Plan Commission, we conclude that based on the facts in this case the trial court did have jurisdiction of this cause. The following sequence of events is important to our treatment of the Plan Commission's arguments:

| | |
|---|---|
| 1957 | Legislature enacts <u>Ind.Code</u> 18–7–4–18: |
| | "Two-thirds (⅔) of the members of the commission shall constitute a quorum. Action of the commission is not official, however, unless concurred in at a regular or properly called special meeting, by a majority of the members of the commission in attendance." |
| May 25, 1974 | Developer files application for preliminary plat approval. |
| June 1974 | First vote on Developer's preliminary plat (6 yes/6 no). |
| January 13, 1975 | Executive Committee of Plan Commission met with quorum present and Developer's preliminary plat was discussed but because of one abstention, the Executive Committee lost its quorum and was unable to vote whether or not to place Developer's application on the January agenda. |
| February 11, 1975 | Executive Committee voted not to place Developer's plat on Plan Commission's agenda. |
| March 11, 1975 | Motion before Executive Committee to place Developer's plat on March agenda did not carry. |
| April 29, 1975 | Legislature's amendment to IC 18–7–4–18 becomes effective: |
| | "A majority of the members of the commission shall constitute a quorum. Action of the commission is not official, however, unless concurred in at a regular or properly called special meeting, by a majority of the members of the commission." |
| May 27, 1975 | Plan Commission lacked quorum to hear application on Developer's plat. |
| June 24, 1975 | Second vote on Developer's preliminary plat (7 yes/5 no). |
| August 25, 1975 | Plan Commission votes to continue the hearing on Developer's plat until its September 22, 1975 meeting. |
| October 27, 1975 | Third vote on Developer's preliminary plat (6 yes/5 no). |
| November 24, 1975 | Fourth vote on Developer's preliminary plat (6 yes/5 no). |
| December 5, 1975 | Developer files suit against the Plan Commission seeking an order of mandate, declaratory relief, and a mandatory injunction in essence asking the trial court to declare the votes of dissenting members invalid and to order the Plan Commission to approve the preliminary plat. |
| June 9, 1976 | Trial court grants the relief requested under Counts I and II of Developer's Complaint (mandate and declaratory relief, respectively) and denies the relief requested under Count III (mandatory injunction). |

We reject the Plan Commission's argument that lack of official action [4] precludes the trial court from assuming jurisdiction over the Developer's suit. We note initially that the Plan Commission fails to support this conclusion with appropriate authority as required by Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). More importantly, however, the Plan Commission's conten-

4. As part of its argument regarding the lack of official action, the Plan Commission contends the Developer made no "demand" that the Commission reach a "majority of the members of the Commission" decision. As the Plan Commission failed to raise this issue in its Motion to Correct Errors, it is waived. T.R. 59(G). Were we, however, to reach the Commission's demand argument, it would be summarily rejected. Citing *State ex rel. Wick v. Slick*, (1882) 86 Ind. 501 and *Lewsader v. State ex rel. Vigo County Area Plan Commission*, (1963) 244 Ind. 275, 190 N.E.2d 654, the Plan Commission contends a demand by the Developer for the requisite majority action is a prerequisite to bringing a mandate proceeding. Neither case is applicable since the purpose of the demand is to give the public body or officer an "opportunity" to perform the act required by law. Pursuant to *City of Hobart v. State ex rel. Roper*, (1926) 198 Ind. 574, 154 N.E. 384, the Developer satisfied this demand rule by attending the meetings on plat approval and requesting the Plan Commission to act. Furthermore, it would be both unreasonable and illogical to require a developer to somehow force the Plan Commission to remain at a meeting until eight members voted one way or the other. We also note that by failing to reach the requisite eight member concurrence in four consecutive hearings, the Plan Commission has breached its statutory duty "to render a *decision* within a reasonable period." *Indiana State Highway Commission v. Zehner*, (1977) Ind.App., 366 N.E.2d 697, 701.

tions overlook the power of reviewing courts to mandate public officials, boards and commissions to perform ministerial acts where there is a clear legal duty to perform such acts:

It is the general rule, as contended by appellants, that writs of mandate will not be granted to control the discretionary action of a public officer, board or commission. However, the law is also well established by a long line of decisions that public officials, boards and commissions may be mandated to perform ministerial acts where there is a clear legal duty to perform such acts.

The basic question presented by this appeal is whether under the circumstances here presented there was a clear duty on the part of the Town Board of Dyer to approve or disapprove the plat as submitted as a ministerial act.

Cities and towns have been granted broad authority by the state which created them to control the development of areas in and adjacent to them. However, public policy requires that this authority be exercised in a standardized and clearly defined manner so as to enable both the landowner and the municipality to act with assurance and authority regarding the development of such areas. It is for this reason that although public policy requires municipal control of such development, nevertheless the authority of a town to deny a landowner the right to develop his property by refusing to approve the plat of such development is by statute made to rest upon specific standards of a statute or implementing ordinance. Thereafter the approval or disapproval of the plat on the basis of the controlling standards is a ministerial act.

. . . . .

Under the above circumstances, it appearing that the plat of the subdivision as submitted complied with all the specific requirements of the statute . . . it therefore became the mandatory duty of the town board to approve and accept the plat as submitted. Therefore, it cannot be said that the court abused its discretion in ordering the appellants to perform the duty imposed upon them by statute. (citations omitted)

*Knutson v. State ex rel. Seberger*, (1959) 239 Ind. 656, 658–663, 157 N.E.2d 469, 471–473. Assuming the Developer's preliminary subdivision plat complied with IC 18–7–4–56 and the Subdivision Control Ordinance of Tippecanoe County, it became the mandatory duty of the Plan Commission to approve the plat. Under these circumstances, the trial court could properly assume jurisdiction to compel or mandate the Plan Commission to approve the Developer's plat.

The act of approval by a village board . . . when the statutes and ordinances have been complied with in making a plat of a subdivision, is ministerial and may be enforced by *mandamus*.

*Knutson*, 239 Ind. 656, 660 n.4, 157 N.E.2d 469, 471 *citing Hoerrmann v. Wabash R. Co.*, (1923) 309 Ill. 524, 141 N.E. 289, 293.

The Plan Commission's analysis regarding no official action not only overlooks the theory and substance of the Developer's Complaint, but also leads to absurd results. If appellate review in mandamus will not lie after *four* unsuccessful attempts to obtain a majority concurrence in the Plan Commission of a preliminary plat which arguably meets all applicable statutory and implementing ordinance requirements, why after forty or four hundred? We summarily reject an analysis which would forever deny approval of a preliminary plat because of the fortuitous circumstance of an equally divided Commission or one whose members, as in the case at bar, do not always attend meetings.[5] Indeed, were we to adopt the

5. In each of the four hearings on the Developer's preliminary plat, at least three members of the Plan Commission failed to attend. The record does not disclose whether these absences were due to disqualification, sickness or otherwise. It is axiomatic that these absences make it significantly more difficult for a devel-

oper to win the requisite eight member majority approval. As the attendance of Commission members dwindles, the percentage of favorable votes by those present needed to approve a plat increases. Suppose for example seven of the fifteen Commission members disqualify themselves for conflicts of interest. Under IC 18–7–

theory proposed by the Plan Commission, a developer would have no legal recourse should a vindictive Plan Commission improperly refuse to even consider or vote on a preliminary plat. This position is, of course, untenable:

> [P]ublic interest . . . requires that action be taken upon each application [action on the renewal of a beverage permit] within a reasonable time, so that the applicant will not, as in the case at bar, be somewhere between approval and denial, not able to proceed with his business, nor able to further pursue his administrative remedies.

*Indiana State Highway Commission v. Zehner*, (1977) Ind.App., 366 N.E.2d 697, 701 citing *Indiana Alcoholic Beverage Commission v. State ex rel. Harmon*, (1977) Ind. App., 365 N.E.2d 1225. We, therefore, hold that regardless of the lack of official action, the trial court did not err in denying the Plan Commission's Motion to Dismiss or in assuming jurisdiction of this case.

We also reject the Plan Commission's argument that the trial court lacked jurisdiction because no final action was taken on the Developer's plat. The Plan Commission relies solely on *Downing v. Board of Zoning Appeals of Whitley County*, (1971) 149 Ind. App. 687, 690–91, 274 N.E.2d 542, at 544, to support this proposition:

> Courts are reluctant to review interim steps of an administrative body which are not, or have not become final. Such review would only delay the administrative process, thereby rendering administrative authority ineffectual.

> For a decision of a board of zoning appeals to be judicially reviewable, it 'must have an element of finality to it and be a completed action in the matter under consideration. In addition, it is necessary that all proper procedural steps be taken in connection with the appeal.'

'Final order' means an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action. Generally, judicial review is denied for lack of finality if an action by an administrative agency is only anticipated. Review will also be denied when action has been taken if the matter is still pending final disposition of interim steps. (citations omitted)

The Plan Commission, however, overlooks the existence of applicable exceptions to the general requirement of finality:

> The requirement of finality, however, does not afford an administrative body the right to arbitrarily delay a decision indefinitely when all material facts bearing upon the decision have either been supplied or have been admitted as unattainable. Zehner has repeatedly informed the Commission that he has no more documentation, yet the Commission refuses to either approve or disapprove the claim, in effect leaving Zehner in a state of financial limbo.

> There are exceptions to the general requirement of a final and formal decision for judicial review. Where a public officer or administrative body ignores a clear legal duty to perform a 'ministerial' act, as opposed to a 'discretionary' act, the court may order such performance, provided no alternative legal remedy exists and provided irreparable harm would otherwise result. (citations omitted)

*Indiana State High Commission v. Zehner*, (1977) Ind.App., 366 N.E.2d 697, 700. We believe the Developer in the case at bar has brought itself within this exception. After untold expenses,[6] four unsuccessful hear-

---

4–18, *supra*, in order to obtain the required "majority of the members of the commission" concurrence, there must be a *unanimous* vote. Indeed, should eight or more of the fifteen Commission members disqualify themselves, there could *never* be this "majority" concurrence and, therefore, there could *never* be any "official" action. As we are unable to find any

statutory or implementing ordinance provisions regarding the filling of *temporary* vacancies in the Commission, we believe this area is ripe for legislative pronouncement.

6. Considering only interest payments, taxes and rising construction costs, uncontradicted testimony established that the Developer will

ings on approval, numerous attempts to have the application placed on the agenda, at least three amendments, and five years, the Developer has yet to even obtain a "decision" from the Plan Commission. Thus, although this appeal is based on an interim step in the plat approval process, the trial court correctly assumed jurisdiction.

## II. SCOPE OF REVIEW

The Plan Commission next argues the trial court exceeded the allowable scope of appellate review when it held: (1) the preliminary plat met the standards of the Subdivision Control Ordinance, (2) the Plan Commission should have approved that plat, and (3) the preliminary plat is approved and the Plan Commission is ordered to approve it immediately.[7] The Plan Commission contends the trial court may not direct what order or decision an administrative agency must make; rather, the court's duty is to define the law and then remand for further proceedings not inconsistent with the opinion.

■ We agree a reviewing court must ordinarily remand to the administrative agency with instructions to proceed in a manner not inconsistent with the court's opinion rather than commanding the administrative body to perform a particular act. *See Heflin v. Red Front Cash & Carry Stores, Inc.,* (1947) 225 Ind. 517, 75 N.E.2d 662; *Indiana State Highway Commission v. Zehner,* (1977) Ind.App., 366 N.E.2d 697; *Aeronautics Commission of Indiana v. Ra-*

*dio Indianapolis, Inc.,* (1977) Ind.App., 361 N.E.2d 1221. We, nevertheless, believe these cases to be distinguishable[8] and find *Knutson v. State ex rel. Seberger,* (1959) 239 Ind. 656, 157 N.E.2d 469 dispositive.

In *Knutson* a subdivider brought a mandate action against the Town Board of Trustees of Dyer, Indiana, to require the approval of a proposed subdivision within the town. In affirming the trial court's judgment ordering the town board to approve the plat, the Indiana Supreme Court held that approval of a plat meeting the requirements of applicable statutes and ordinances constitutes a ministerial, as opposed to discretionary, act enforceable in mandamus. As we hold, *infra,* that the Plan Commission in the case at bar had a clear legal duty to approve the Developer's preliminary plat, the trial court did not abuse its discretion in mandating immediate approval.

## III. Section 4.33(b)(2)

■ The Plan Commission contends the trial court erred by failing to make a specific Finding of Fact as to whether the proposed subdivision plat conformed to § 4.33(b)(2)[9] of the Subdivision Control Ordinance. The parties stipulated that the requirements of the Ordinance were met in all respects except §§ 1.1, 4.32, 4.33(b)(2), 4.44, and 6.2.05. Thus, compliance with § 4.33(b)(2) was in issue. Furthermore, special findings were required under both T.R. 52(A) (because they were requested by intervening defendants) and T.R. 52(A)(2)

---

have expended over $170,000 annually while waiting for the Commission's approval.

**7.** As we believe the trial court granted this relief under Developer's Count I (mandate), we do not address the Plan Commission arguments premised on the assumption that the court granted this relief under Count II (declaratory relief).

**8.** Cases which preclude reviewing courts from ordering an agency to perform a particular act are almost universally governed by the Administrative Adjudication Act, 4–22–1–1 *et seq.* Since the Tippecanoe County Area Plan Commission is not a *statewide* administrative body, however, the AAA does not apply. *See Yunker v. Porter County Sheriff's Merit Board,* (1978)

Ind.App., 382 N.E.2d 977; *Wolfcale v. Wells County,* (1977) Ind.App., 364 N.E.2d 1023; *Tippecanoe Valley School Corp. v. Leachman,* (1970) 147 Ind.App. 443, 261 N.E.2d 880.

**9.** 4.33 The plat shall contain the following information:
 b. Existing Conditions:
 (2) Location, width, and names of all existing or prior platted streets or other public ways, railroad and utility right-of-ways, parks and other public open spaces, location of permanent buildings or structures, and section and municipal corporation lines within or adjacent to the tract.

(because the Plan Commission was arguably an administrative agency).

The purpose of special findings is to provide the parties and reviewing courts with the theory on which the judge decided the case in order that the right of review for error may be effectively preserved. Thus, whether the findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. In making this determination, a reviewing court will accept the findings made by the trial court if they are supported by evidence of probative value. Furthermore, on appeal the findings will be construed together and will be liberally construed in support of the judgment. *In re Marriage of Miles*, (1977) Ind.App., 362 N.E.2d 171, 174. The precise issue we must address is, therefore, whether the findings of the trial court adequately disclosed a valid basis by which the court could dispose of the issue regarding compliance with § 4.33(b)(2). We hold they do.

We believe that, taken as a whole, Findings of Fact # 7, 8, 14 and 19 adequately disclose the trial court disposed of the issue regarding § 4.33(b)(2) by finding the Plan Commission was "estopped" from raising any noncompliance in the fourth hearing due to its failure to raise same in the third.

7. On May 25, 1974, Plaintiff filed its application for approval of the preliminary plat of a subdivision of the real estate described in Finding No. 2, *supra*, known as Sheffield Estates Part II, which plat was amended from time to time thereafter with the last amendment to the application and plat made on November 7, 1975. Each amendment was made in accord with suggestions and requirements of the Commission and its Executive Directors.

8. The proposed preliminary plat was considered by the Commission at four separate public hearings. In June 1974, the Commission vote was 6 for approval of the plat and 6 against. On June 24, 1975, the vote was 7 in favor and 5 against. On October 27, 1975, and November 24, 1975, the Commission cast 6 votes in favor of plat approval and 5 votes against approval. Eight affirmative votes are required for approval of a plat.

14. Section 4.33(b)(2) of the Subdivision Control Ordinance specifies that the plat shall contain:

'(2) Location, width, and names of all existing or prior platted streets or public ways, railroad and utility right-of-ways, parks and other public open spaces, locations of permanent buildings or structures, and section and municipal corporation lines within or adjacent to the tract.

No Commission member disapproved the plat October 27, 1975, by reason of its alleged failure to include the information required by this section of the ordinance. Commission members Keith McMillin and Glenn J. Michael disapproved the plat November 24, 1975, and asserted as reasons. the failure of the plat to comply with Section 4.33(b)(2) of the ordinance.

19. It is a requirement of the Tippecanoe County Subdivision Control Ordinance that the developer submit another preliminary plat and obtain approval thereof before proceeding to any final approval, recordation of a plat and sale of lots on the area presently known as Sheffield Estates Part II.

We find the trial court's lengthy order sufficiently discloses the basis and underlying grounds for its decision as well as the specific facts in support thereof. *Hawley v. South Bend, Dept. of Redevelopment*, (1978) Ind., 383 N.E.2d 333, 336. As previously stated, the trial court found for the Developer on both Counts I and II (mandate and declaratory relief, respectively):

Conclusion of Law 18: The Area Plan Commission has considered the proposed preliminary plat of Sheffield Estates Part II on four separate occasions. Its failure to give preliminary approval has been an arbitrary and unjustifiable abuse of discretion, *expecially [sic] when considered*

*in light of the reasons given in support of negative votes cast October 27, 1975, and November 24, 1975 . . . . .* (emphasis added)

In the context of concluding the Plan Commission should have approved the Developer's plat, the court decreed:

(1) The individual votes of Keith McMillin, A. B. Scaglia, William Vanderveen, Doyle L. Newton and Glen J. Michael cast November 24, 1975, are invalid and contrary to law.

We believe the following facts enunciated in Findings of Fact # 7, 8, 14 and 19 support the court's conclusion that the votes by Michael and McMillin on November 24, 1975, to disapprove the preliminary plat for noncompliance with § 4.33(b)(2) were invalid and contrary to law.

(1) A developer must obtain preliminary plat approval before proceeding to any final approval.

(2) Four times the Developer's plat was considered by the Plan Commission and four times the Commission failed to reach the requisite eight vote majority concurrence to approve.

(3) After each "denial," the Plan Commission, as required, gave a written statement indicating its reasons for failing to approve.

(4) Each time the Developer amended his plat to conform with the suggestions and requirements of the Plan Commission's dissenting members.[10]

(5) Three times, the Plan Commission "rejected" the Developer's amended plat.

(6) In the unsuccessful hearing on October 27, 1975, no member of the Plan Commission voted to disapprove the Developer's plat for noncompliance with § 4.33(b)(2).

(7) On November 7, 1975, the Developer again amended his plat to comply with the reasons for disapproval which *were* given in the October 27, 1975 meeting.

(8) McMillin and Michael disapproved the Developer's preliminary plat on November 24, 1975, solely for noncompliance with § 4.33(b)(2).

As regards § 4.33(b)(2), we believe the trial court's findings evidence a course of conduct by the Plan Commission to "draw out" the Developer's plat approval as long as possible by *citing new and different reasons* for negative votes. Thus, the negative votes of McMillin and Michael in the fourth meeting on November 24, 1975, were invalid and contrary to law because (1) on November 7, 1975, the Developer amended his plat to conform with the reasons which *had* been given for negative votes in the October 27, 1975 meeting and (2) no Commission member cited § 4.33(b)(2) as a reason for disapproval in the October 27, 1975 meeting. Thus, we find the specific findings reproduced above established the trial court utilized an "estoppel" theory to support its conclusion that, "[the Plan Commission's] failure to give preliminary approval has been an arbitrary and unjustifiable abuse of discretion, *expecially [sic] when considered in light of the reasons given in support of negative votes cast October 27, 1975, and November 24, 1975.*" (emphasis added) We believe that the purpose of special findings has been met and conclude that the trial court's findings adequately disclose a valid basis by which the court could dispose of the issue *regarding compliance with* § 4.33(b)(2).

■ In a related argument, the Plan Commission contends the trial court's decision regarding compliance with § 4.33(b)(2) is not supported by sufficient evidence. In light of our decision that the trial court appropriately utilized an "estoppel" theory to dispose of the § 4.33(b)(2) issue, we disagree.

The facts necessary to establish equitable estoppel were enunciated in *State ex rel. Crooke v. Lugar,* (1976) Ind.App., 354 N.E.2d 755, 765:

10. We note that in its answer to the Developer's Complaint, the Plan Commission admitted, "that since said original submission, plaintiff [Developer] has caused various technical de-

fects in said proposed plat to be corrected, all in accord with suggestions and requirements of defendant, Tippecanoe County Area Plan Commission, and its Directors."

(1) A representation or concealment of material facts;

(2) The representation must have been made with knowledge of the facts;[11]

(3) The party to whom it was made must have been ignorant of the matter;

(4) It must have been made with the intention that the other party should act upon it;

(5) The other party must have been induced to act upon it.

Pursuant to IC 18–7–4–58,[12] the Plan Commission has a duty to inform a developer of *all* reasons for negative votes.[13] Thus, assuming the Developer's plat failed to comply with § 4.33(b)(2) at the third meeting on October 27, 1975, the Plan Commission had a statutory obligation to inform the Developer of this defect. Stated conversely, the Developer had a reasonable expectation that *all* defects in its plat were revealed in the third meeting and that by amending its plat to conform with *stated* reasons, approval would follow. By the Commission's silence in the third meeting regarding noncompliance with § 4.33(b)(2) it clearly breached its "duty to speak" and thereby detrimentally misled the Developer. *See Johnson v. Western Indiana Mining Co.,* (1923) 81 Ind.App. 79, 140 N.E. 559. We, therefore, hold the Plan Commission was estopped from raising noncompliance with § 4.33(b)(2) in the fourth meeting due to its failure to raise same in the third.

■ We interpret IC 18–7–4–58 to require the Plan Commission to list *all* reasons for disapproval at the *first* reasonable opportunity. This will preclude the necessity for numerous piecemeal revisions as in the case at bar. Thus, if ten reasons exist for disapproval, the Plan Commission must make all ten known at the first reasonable opportunity; it cannot raise them one at a time and thereby force the developer to amend and resubmit his plat ten times. We note that estoppel would be inappropriate under circumstances in which the Plan Commission fails to list legitimate reasons for disapproval due to excusable ignorance or neglect. On the record before us, however, this was not the case with respect to the Developer's plat.

## IV. CONCRETE STANDARDS

The Commission finally contends the trial court's Finding and Conclusion that § 1.1 of the Tippecanoe County Subdivision Control Ordinance contained no specific standards

11. A person, to be estopped must have had knowledge, actual or constructive, of the real facts at the time of his representation, concealment, or other conduct alleged to constitute the basis of the estoppel. Thus, the doctrine of equitable estoppel has no application where the person sought to be estopped acted in excusable ignorance of the facts and the true state of affairs, but, where a person is bound to know the facts, or if his ignorance is the result of inexcusable negligence, he may be estopped without actual knowledge of the facts. *See generally* 12 I.L.E. Estoppel § 23 (1959). We note that Plan Commissions would, of course, typically be held to know the requirements of subdivision control ordinances they are charged with implementing.

12. .18–7–4–58 [53–1057]. Proposed subdivision plat—Approval by commission—Certificate—Record of disapproval.—If after the hearing the commission determines that the application and plat comply with the standards set forth in the subdivision control ordinance they shall approve and fix the commission's seal upon the plat together with a certificate disclosing that proper public notice of the hearing has been given and that a majority of the members of the commission concur in its approval. The certificate shall be signed by the president of the commission and be attested to by the secretary of the commission.

If the commission disapproves the plat, it shall set forth its reasons in its own records and provide the applicant with a copy. [Acts 1957, ch. 138, § 57, p. 261.]

13. We note that the ballots of dissenting members of the Commission typically indicated only such very general reasons for disapproval as "§ 1.1," "too numerous" or "§ 4.33(b)(2)." In oral argument before this Court, counsel for the Plan Commission contended the Developer must ask for further clarification from the Commission as to the *specific* reasons for disapproval. We reject this argument and hold that it is the Commission's duty in the first instance regardless of any requests to furnish the developer with specific and concrete reasons for disapproval so the developer can amend its plat so as to comply with applicable ordinances. *See* IC 18–7–4–58; *Dosmann v. Area Plan Commission of St. Joseph County,* (1974) 160 Ind.App. 605, 312 N.E.2d 880.

and, therefore, could not be utilized as grounds for disapproval, was incorrect and not sustained by the evidence. We disagree.

 A Plan Commission's determination to approve or disapprove a proposed plat must be based on concrete standards:

It is apparent from a reading of these portions of the 1957 Act that the commissions created under the Act have no discretion to approve some plats and disapprove others. They may only determine whether a plat presented to them comports with the requirements of their subdivision ordinance. And, if they decide that the plat is defective, they must advise the applicant of the nature of the defects. The obvious purpose of these provisions is to ensure that a landowner's plat will be measured only against the concrete standards of the subdivision ordinance in effect. Thus, these provisions serve the legitimate public interest in planned community growth while protecting the private rights of landowners. Cf.: *Suburban Homes v. Anderson*, (1970) 147 Ind.App. 419, 261 N.E.2d 376.

*Dosmann v. Area Plan Commission of St. Joseph County*, (1974) 160 Ind.App. 605, 610, 312 N.E.2d 880, 884. The precise question we must address is whether § 1.1 of the Subdivision Control Ordinance contains specific and concrete standards properly utilized in the determination of a plat's compliance. We hold it does not.

Section 1.1 states:

This ordinance is enacted for the purpose of adopting subdivision regulations for Lafayette, West Lafayette, and Tippecanoe County, Indiana.

The regulation of land subdivision has become widely recognized as a method of insuring sound community growth and the safeguarding of the interests of the home owner, the subdivider, and the local government. The citizens of Tippecanoe County need the assurance that residential subdivisions will provide permanent assets to their community. This ordinance should be viewed, not as an end in itself, but as one tool or technique for the shaping of urban land according to a comprehensive plan for the development of Tippecanoe County as a whole.

The planning of a subdivision is the joint responsibility of the subdivider and the Tippecanoe County Area Plan Commission (hereinafter called "The Commission"), the former having the prime responsibility for the creation of desirable, stable neighborhoods that become an integral part of the entire county. Subdivision design and utility can enhance or depreciate the character and potentialities of the surrounding areas and stabilize or endanger the individual's investment in a home.

The Commission has the responsibility of helping the subdivider achieve a high standard of excellence in the planning of his subdivision, and of informing all subdividers of the minimum standards and requirements for subdivision development within Tippecanoe County.

Testimony of certain witnesses notwithstanding, we are completely unable to glean from § 1.1 any specific or concrete standards by which a proposed plat may be judged. The clear import of the fourth and last paragraph in § 1.1 is that *subsequent* sections of the Subdivision Control Ordinance contain the standards and requirements by which a plat's compliance will be judged. Indeed, even the title of § 1.1 ("Purpose and Objectives of the Ordinance") negates the Plan Commission's argument regarding concrete standards. To find § 1.1 contains sufficiently specific and concrete standards would be to frustrate the public policy arguments enunciated in *Knutson*, 239 Ind. 656, 659, 157 N.E.2d at 471, requiring that the Plan Commission's "authority be exercised in a standardized and clearly defined manner so as to enable both the landowner and the municipality to act with assurance and authority regarding the development of such areas." The Plan Commission's utilization of § 1.1 to disapprove the Developer's plat may even be characterized as an error of constitutional dimension:

In order to satisfy due process, an administrative decision must be in accord with previously stated, ascertainable standards. This requirement is to make certain that administrative decisions are fair, orderly and consistent rather than irrational and arbitrary. The standard should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision. (citations omitted)

*Podgor v. Indiana University*, (1978) Ind. App., 381 N.E.2d 1274, 1283. We find that § 1.1 in no way gives the requisite fair warning as to what the agency will consider in making its decision and we, therefore, hold the trial court correctly held § 1.1 may not be utilized as grounds for disapproval.

We conclude that the trial court did not abuse its discretion in (1) assuming jurisdiction over this case, (2) finding the negative votes of dissenting members in the November 24, 1975, meeting invalid, (3) finding the Plan Commission had a clear legal duty to approve the Developers preliminary plat, and (4) ordering the preliminary plat immediately approved. Accordingly, we affirm.

MILLER, P. J., and YOUNG, J., concur.