**STATE of Indiana, ex rel. KATHERINE HAMILTON MENTAL HEALTH CENTER, INC., Plaintiff-Appellant,**

**v.**

**CLAY COUNTY, Helen G. Megenhardt, County Auditor, George Lynch, County Treasurer, Joe Knust, William J. Wilson, Wesley W. Myers, duly elected and acting County Commissioners of Clay County, Richard L. Berger, John Ringo, Mark L. Dierdorff, Hubert Williams, John H. Oehler, Virgil Trout and Ronald E. Bryan, duly elected and acting County Councilmen of Clay County, Defendants-Appellees.**

No. 1–484A92.

Court of Appeals of Indiana, First District.

Feb. 14, 1985.

Rehearing Denied March 19, 1985.

Robert F. Hunt, Wolfe, Frey, Hunt & Olah, Terre Haute, Phillip E. Bainbridge, Indianapolis, for Indiana Council of Community Mental Health Centers, Inc.

John Baumunk, William G. Brown, Brazil, for appellees.

ROBERTSON, Judge.

This action arises from an order of mandate filed by Katherine Hamilton Mental Health Center (Center) against the Clay County Council, Clay County Commissioners, Clay County Auditor and Clay County Treasurer (County) seeking funds pursuant to IND.CODE 16–16–1–6 for the years 1973 through 1981. The Parke Circuit Court found in favor of the County denying the request for order of mandate and this appeal followed.

We affirm.

The Center alleged in its complaint that pursuant to I.C. 16–16–1–6, Clay County was required to fund them at a rate of four cents per hundred dollars of the assessed valuation of the taxable property within the county for each of the years involved and that funding had been made, but at substantially less than required. In its answer, County denied the allegations and set forth the affirmative defenses of laches as well as estoppel and waiver.

The trial court made findings of fact and conclusions of law which we shall not set forth verbatim. In short, the trial court found that the County had provided funding to the center in an amount sufficient when combined with the funding to the Clay County Association for Retarded Children (CCARC). The funds provided by County to CCARC were given to the Child-Adult Resource Service (CARS) which were then administered for obligations of its affiliate, the CCARC. The trial court found CARS to be an approved community development disability center as defined in I.C. 16–16–1–1.

In addition, the trial court found the Center had failed to provide the County with any figures which would have determined the funding requirements under the lesser rate provided in I.C. 16–16–1–6. The Center also failed to object to the amount of funding given for each of the years 1973 through 1983 and failed to establish any justifiable reason for the delay in asserting their claimed rights.

In his motion to correct errors, appellant sets forth several alleged errors of law that occurred at trial. However, we feel that the case essentially turns on the following two issues:

1. Whether the funds paid by County to CCARC can be applied to the obligation of County to fund community mental health centers as required by I.C. 16–16–1–6.

2. Whether the Center waived any rights it may have had pursuant to I.C. 16–16–1–6.

 This is an appeal from a negative judgment in which the trial court made findings of fact and conclusions of law. As such, we will not set aside the findings of the judgment unless they are clearly erroneous. *Lamb v. Conder*, (1975) 166 Ind. App. 293, 335 N.E.2d 625; IND.RULES OF TRIAL PROCEDURE, Trial Rule 52(A). We also defer to the trier of fact's superior ability to evaluate witness credibility and the consequent weight to be accorded testimony. *Id.*

The first issue is whether funds paid by County to CCARC could be utilized in meeting County's requirement to fund community mental health centers pursuant to I.C. 16–16–1–6. I.C. 16–16–1–6 provides in part as follows:

A county shall fund Community Mental Health Centers, for operation, in an amount at least equivalent to that which would be raised by an annual tax rate of four cents (4 cents) on every hundred dollars ($100) of taxable property within the county, unless a lesser rate will be adequate to fulfill the county's financial obligations as set forth elsewhere. . . .

The parties agree that the funding requirements provided by the statute are mandatory. Thus, the issue is whether CCARC and/or CARS qualifies as a community mental health center.

The applicable mental health statutes provide us with only a vague distinction between the terms "community mental health center" and "community mental retardation and other developmental disabilities center". It is thus difficult to apply the already conflicting evidence to the law. We choose not to decide whether CCARC and/or CARS falls within the statutory definition of a community mental health center. We feel that the making of such clear cut distinctions is best left to the workings of the legislature. Furthermore, it is unnecessary for us to decide this issue in light of our resolution of issue two. Regardless of whether CCARC and/or CARS

qualifies as a "community mental health center", any rights the Center may have had pursuant to I.C. 16–16–1–6 were waived.

The evidence shows that this action was filed on June 30, 1981, and until that time nothing was done to object or complain to the County. The complaint sought funds for the period 1973 through 1981. There was also evidence showing that although some budget estimates had been submitted for the years in question, no actions requesting money were made after notification that funding would be at less than the statutory rate.

 Our supreme court has held that a demand for an appropriation is a necessary prerequisite for an action in mandate. *Tippecanoe County Area Plan Commission v. Sheffield Developers, Inc.*, (1979) 181 Ind.App. 586, 394 N.E.2d 176, 179, n. 4. The purpose of the demand is to give the public body or officer an "opportunity" to perform the act required by law. *State ex rel Wick v. Slick*, (1882) 86 Ind. 501; *Lewsader v. State ex rel. Vigo County Area Plan Commission*, (1963) 244 Ind. 275, 190 N.E.2d 654. In *Lewsader v. State*, the court stated:

There is merit in such a principle of the law, since no public body or officer should be subjected to a suit or litigation without first being given the opportunity, upon demand, to perform the act which it is claimed he is required under the law to do. Such a preliminary demand, it may be assumed, often will eliminate the necessity of any legal action or will reveal a good defense against such action. (citation omitted).

*Id.* 190 N.E.2d at 656.

 Here the record does not show any demand or action taken prior to filing suit for the appropriated funds. The Center, having failed to satisfy this necessary prerequisite to a mandate action, has thus waived any rights it may have had pursuant to I.C. 16–16–1–6.

Also, pursuant to I.C. 16–16–1–9, the Center is required to submit a total operat-

ing budget to the Department of Mental Health (Department) which shall approve it, but only after review by the participating county councils. Specifically, the statute reads as follows:

16–16–1–9 Budget; rules and regulations

Sec. 9. The Department of Mental Health shall adopt rules and regulations under which each mental health center shall submit to the department the center's program and total operating budget which shall include anticipated income from all gifts except bequests and merchandise, fees, and the county payment as provided for in sections 6 and 7 of this chapter and federal grants for direct service, except research and demonstration grants. The Department of Mental Health, after the auditor of each participating county has certified that the county has met the provisions in Sections 6, 7 and 8 of this chapter shall examine and approve the submitted budget for each center after review of the participating county councils. Gifts, fees, the county payment for operation as determined by Section 6 of this chapter and federal grants for direct service, shall then be subtracted from the total approved operating budget of the center and the Department of Mental Health shall allot to the center the amount of the operating deficit.

There is no showing that this statute was adhered to during the years in question. The only evidence dealing with the budget indicates that estimates were probably submitted for some of the years in question, although there is no exact proof of it. The words of a statute are to be given their plain and ordinary meaning. *Thompson v. State*, (1981) Ind.App., 425 N.E.2d 167. Appellant submits that the Center was only required to submit a budget to the Department. However, the statute clearly states that the Department shall approve the budget after "review of the participating county councils". We thus conclude that the Center has again waived any right it may have had pursuant to I.C. 16–16–1–6 by its failure to comply with I.C. 16–16–1–9. *See also, State of Indiana, ex rel. Southern Hills Mental Health Center, Inc. v. Dubois County*, (1983) Ind.App., 446 N.E.2d 996.

For the above reasons, we affirm the decision of the trial court.

RATLIFF, P.J., and NEAL, J., concur.