BOONE COUNTY AREA PLANNING
COMMISSION, Appellant–
Respondent,

Harold Hotham, et al., Appellants–
Intervenors,

v.

Delores SHELBURNE, Clayton Shel-
burne, and The Lewis Group,
Appellees–Petitioners.

No. 06A04–0010–CV–455.

Court of Appeals of Indiana.

Aug. 17, 2001.

Judy G. Hester, Molitor, Grisham & Hester, Carmel, IN, Thomas A. Whitsitt, Giddings, Whitsitt & McClure, Lebanon, IN, Attorneys for Appellants.

Michael J. Andreoli, Jeffrey S. Jacob, Donaldson, Andreoli & Truitt, Zionsville, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

The Boone County Area Plan Commission ("Plan Commission") appeals an order compelling it to certify a determination of "no recommendation" to the Board of Commissioners of Boone County ("Board of Commissioners") upon the application of Delores Shelburne, Clayton Shelburne and The Lewis Group, Inc. (collectively, "The Lewis Group") for a Zone Map Amendment. We affirm.

### Issues

The Plan Commission presents for review two (restated) issues:

1. Whether the Plan Commission failed to comply with the requirements of Indiana Code section 36–7–4–608(b); and

2. Whether the trial court's remedy for non-compliance usurped the statutory role of the Plan Commission.

### Facts and Procedural History

Clayton and Delores Shelburne own 65.3 acres of property located in Boone County, Indiana and zoned RE Residential.[1] The Lewis Group, Inc., an Indiana corporation with its principal place of business in Hamilton County, Indiana, obtained the right to purchase the subject property. The parties executed a Purchase Agreement dated September 29, 1999.

On March 10, 2000, The Lewis Group filed its "Application for Preliminary Development Plan" and a "Petition for Density Incentives" seeking approval of the Plan Commission for a development with 94 lots and a density incentive up to a maximum of 1.55 housing units per acre. At the conclusion of a public hearing held on April 12, 2000, the Plan Commission voted 6–0, with one abstention, to deny the density incentive petition.

---

1. At the Plan Commission hearing held on April 12, 2000, the current zoning was described by a Plan Commission member as follows: "The design district is an RE Residential Exception, which was established to be a specialty single family residential district to preserve neighborhoods that have histori- cally developed as areas of large lots and large homes. The lot area requirements in this district are higher than other residential districts. Development in this district is typi- cally at a density of less than one home per three acres." (R. 28.)

On May 3, 2000, The Lewis Group filed an application for a zone map amendment seeking to rezone the subject property from RE–Residential to R–2 Residential. The Plan Commission scheduled the rezoning petition for consideration at a public hearing to be held on June 7, 2000. However, on that date, the matter was tabled due to overcrowding in the hearing room. The Plan Commission attempted to reschedule consideration of the rezoning petition to the July 13, 2000 public hearing date, but The Lewis Group objected to non-compliance with the published notice requirements of Indiana Code section 36–7–4–604(b).[2] The Lewis Group requested rescheduling of the rezoning petition for the Plan Commission public hearing to be held on August 2, 2000.

On July 31, 2000, The Lewis Group filed its "Amended Verified Petition for Writ of Certiorari, Verified Complaint for Mandate and Petition for Declaratory Judgment." (R. 3.) In pertinent part, the Complaint alleged that the Plan Commission failed to conduct a public hearing in accordance with the provisions of Indiana Code section 36–7–4–608(b), which provides:

> If the proposal [for changing zoning maps] is not initiated by the plan commission, it must be referred to the commission for consideration and recommendation before any final action is taken by the legislative body. On receiving or initiating the proposal, the commission shall, within sixty (60) days, hold a public hearing in accordance with section 604 of this chapter. Within ten (10) business days after the commission determines its recommendation (if any), the commission shall certify the proposal under section 605 of this chapter.

On August 31, 2000, the trial court entered an "Order for Mandate and Declaratory Judgment" in pertinent part as follows:

1. The Petitioners filed an Application for Rezoning with the Boone County Area Plan Commission on May 5, 2000 seeking a Zone Map Change. Previously, the Petitioners had been denied their Application for Development Plan with Density Incentives on April 12, 2000.

2. The Application filed by Petitioners was reviewed by Staff of the Boone County Area Plan Commission and was found to be complete and free of any deficiencies. The Application was reviewed by the Technical Advisory Committee and placed on the Agenda to be heard at the June 7, 2000 regularly scheduled meeting of the Boone County Area Plan Commission.

3. The Petitioner's Application for Rezoning was not heard at the regularly scheduled meeting on June 7, 2000 nor has any public hearing been conducted to date although the Applicant is scheduled to be heard by the Respondent at their regularly scheduled meeting of September 6, 2000.

4. I.C. 36–7–4–608 places an affirmative duty and burden on the Boone County Area Plan Commission to conduct a public hearing on or before sixty (60) days from May 5, 2000, the date the Petitioners filed their Application for Rezoning. The language of Section 608 says that the Commission *shall*, within 60 days, hold a public hearing .... (emphasis ours) There is nothing equivocal, vague or limiting in this mandatory language.

---

2. Indiana Code section 36–7–4–604(c) mandates that, prior to the certification of any recommendation on a proposed amendment to a zoning ordinance, the Plan Commission must by publication give ten days' notice of a public hearing.

5. While the Respondents have offered various excuses and explanations for not conducting the public hearing pursuant to Section 608, for which the Court has some understanding and sympathy, the failure to conduct a public hearing on the Petitioner's Application for Rezoning is the sole failure and responsibility of the Boone County Area Plan Commission and not the Petitioner.

6. I.C. 34–14–1 et seq. allows this Court broad discretionary power to declare the rights, status and other legal relations between the parties herein and otherwise affect [sic] a remedy where one may not otherwise exist. The Respondents, in the instant case, have failed to act as required by statute. By failing to conduct a public hearing, the Respondent has prompted this Court to act to secure the rights of the Petitioners. The statue [sic] itself provides no obvious guidance or remedy to the Petitioner due to Respondent's failure to act. Accordingly, the Petitioner's Request for Mandamus and Declaratory Relief is justified and supported by the evidence.

IT IS NOW ORDERED AND DECREED BY THE COURT that the Respondent, Boone County Area Plan Commission, shall conduct a public hearing on Wednesday, September 6, 2000 at 7:00 p.m. on the Petitioner's Application for Rezoning. Thereafter, the Respondents shall have to and including their regularly scheduled Plan Commission meeting on October 4, 2000 at 7:00 p.m. to send this matter along to the Board of Commissioners of Boone County with either a favorable, unfavorable or no recommendation and certify their action within ten (10) days thereafter. In the event that Respondent fails to either conduct a public hearing and vote to pass the Petitioner's Application for Rezoning to the Boone County Commissioners with either a favorable, unfavorable or no recommendation on or before October 4, 2000, then, and in that event, the Court specifically orders that the Petitioner's Application be certified by the Boone County Area Plan Commission, within ten (10) days from October 4, 2000, with a "no recommendation" so that the same can be heard and decided by the legislative body, the Board of Commissioners of Boone County.

(R. 127–29.) The Plan Commission moved the trial court to reconsider its order or, alternatively, stay the order and certify it for interlocutory appeal. The motions were denied.

On September 6, 2000, the Plan Commission conducted a public hearing on the zone map amendment petition. The Plan Commission tabled the petition for 60 days, pending receipt of five requested reports (including a report from the Indiana Department of Natural Resources, reports from providers of emergency and utility services, and an assessment of real estate property values).

On October 4, 2000, the Plan Commission met but made no recommendation on the zone map amendment petition. On October 5, 2000, The Lewis Group filed a "Request for Order to Show Cause," which disclosed the circumstances surrounding the Plan Commission meeting one day earlier:

Petitioner The Lewis Group, Inc. hereby reports to the Court that Respondent the Boone County Area Plan Commission took no action at its meeting on October 4, 2000 to cause Petitioner's application for a zone map amendment to be forwarded to the Board of Commissioners of Boone County per this Court's earlier Order of August 31, 2000. At its

meeting on October 4, 2000, President of the Plan Commission Jay Parks made a motion to forward Petitioners' application for a zone map amendment to the Board of Commissioners of Boone County with an unfavorable recommendation. This motion was seconded by Doug Akers. However, after the motion had been made and seconded, counsel for Respondent the Boone County Area Plan Commission, Judy Hester, warned that if the Plan Commission were to make any recommendation at all, either favorable, unfavorable, or no recommendation, such a vote would adversely affect the Plan Commission's case on appeal.... Nevertheless, notwithstanding Ms. Hester's dire warning, the motion to forward Petitioner's application for a zone map amendment to the Board of Commissioners of Boone County with an unfavorable recommendation failed by only one vote.

(R. 190–91.) On October 19, 2000, the trial court entered an order providing in pertinent part:

> Given the failure of the Boone County Area Plan Commission to certify the matter as required by this Court's previous Order of August 31, 2000, this Court now orders that Petitioner's application for a zone map amendment should be certified and forwarded to the legislative body of Boone County, the Board of Commissioners of Boone County, by operation of law with "no recommendation."

(R. 219–20.) From this order, the Plan Commission appeals.

### Discussion and Decision

#### I. Standard of Review

■ The instant appeal involves the interpretation of zoning statutes. The interpretation of a statute is a question of law reserved for the courts. *Wayne Metal* *Products Co., Inc. v. Indiana Dept. of Envtl. Mgmt.*, 721 N.E.2d 316, 317 (Ind.Ct.App.1999), *trans. denied.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* The court's goal in statutory construction is to determine and give effect to statutory intent. *Collier v. Collier*, 702 N.E.2d 351, 354 (Ind. 1998). In so doing, we construe together statutes that relate to the same general subject matter. *State v. J.D.*, 701 N.E.2d 908, 910 (Ind.Ct.App.1998), *trans. denied.* However, we may not read into a statute that which is not the expressed intent of the legislature. *State v. Derossett*, 714 N.E.2d 205, 206 (Ind.Ct.App.1999).

#### II. Hearing Requirement of Indiana Code section 36–7–4–608(b)

Initially, the parties disagree as to the specific duty imposed upon the Plan Commission by Indiana Code section 36–7–4–608(b). The Plan Commission claims it is required to initiate a public hearing within 60 days, but may continue the hearing as necessary to obtain information pertinent to a zoning map amendment. The Lewis Group contends that the role of the Plan Commission is "purely advisory" and should be concluded within 60 days. In essence, this is the construction of Indiana Code section 36–7–4–608(b) adopted by the trial court. However, the plain language of the statute leads to a contrary conclusion.

■ Indiana Code section 36–7–4–608(b) provides in pertinent part: "On receiving or initiating the proposal, the commission shall, within sixty (60) days, hold a public hearing in accordance with section 604 of this chapter." Clearly, the Plan Commission is required to hold a public hearing on the merits of the proposal within 60 days. However, this is not equivalent to a mandate to obtain and evaluate all pertinent

information, reach a decision and convey the recommendation to the legislative body within 60 days. Moreover, Indiana Code section 36–7–4–604(b)(8) specifically contemplates that the hearing may be continued "from time to time." Indiana Code section 36–7–4–604(d) contemplates that multiple hearings may be held where the population distribution renders this desirable.

Indiana Code section 36–7–4–608(b) further provides: "Within ten (10) business days after the commission determines its recommendation (if any), the commission shall certify the proposal under section 605 of this chapter." Although the statute prescribes a specific limit on the time that may elapse between a determination and the certification, it is silent as to the period of time that may elapse between the initial hearing and the determination.

The Plan Commission was not statutorily required to fulfill all its duties and forward its recommendation within 60 days. Nevertheless, it is clear that the Plan

Commission conducted no hearing on the merits of The Lewis Group's petition within the 60–day period prescribed by statute. Therefore, we turn to the question of whether the trial court's remedy for noncompliance exceeded its authority.

### III.  Remedy for Non–Compliance

■ The Plan Commission alleges that the trial court usurped the advisory role delegated to the Plan Commission in Indiana Code section 36–7–4–602(c).[3] The Lewis Group responds that the trial court, in the absence of express statutory authorization, exercised its broad equitable powers to fashion a remedy to prevent the Plan Commission from abusing its advisory role by needlessly prolonging its decision-making process.[4]

■ Generally, writs of mandate will not be granted to control the discretionary action of a public officer, board or commission. *Tippecanoe County Area Plan Comm'n v. Sheffield Developers, Inc.*, 181 Ind.App. 586, 590, 394 N.E.2d 176, 180

---

3. Indiana Code section 36–7–4–602(c) provides:

"After the zoning ordinance for a jurisdiction has been adopted as described in subsection (a), the following procedure applies to a proposal to change the zone maps (whether by incorporating an additional map or by amending or deleting a map) incorporated by reference into the ordinance:

(1)  The proposal may be initiated either:
  (A)  by the plan commission; or
  (B)  by a petition signed by property owners who own at least fifty percent (50%) of the land involved. (Under the advisory plan law or the area plan law, any participating legislative body also may initiate the proposal and require the plan commission to prepare it.)
(2)  The plan commission or petitioners must prepare the proposal so that it is consistent with section 601 of this chapter.
(3)  The plan commission and the legislative body both must comply with section 603 of this chapter.

(4)  The plan commission must give notice and hold a public hearing under section 604 of this chapter.
(5)  The plan commission must certify the proposal to the legislative body under section 605 of this chapter.
(6)  The legislative body must consider the proposal under section 608 of this chapter, and section 608 governs whether the proposal is adopted or defeated.
(7)  If the proposal is adopted under section 608 of this chapter, the plan commission must update the zone maps that it keeps available under section 610 of this chapter.
(8)  The zone map changes take effect as described in section 610 of this chapter."

4.  We observe that the argument of The Lewis Group that the trial court was, because of statutory silence, "forced to effectuate a remedy where none before existed" to "keep the process moving forward," (Brief of Appellee at 12), is an argument more properly addressed to the legislature.

(1979). However, public officials, boards and commissions may be mandated to perform ministerial acts where there is a clear legal duty to perform such acts. *Id.*

The Plan Commission argues that a decision on a rezoning petition is not ministerial, but involves discretion and subjective evaluation of the facts surrounding an application. We agree that, had the Plan Commission elected to reach a decision, the decision-making process would have involved an evaluative process that is not merely ministerial. However, the Plan Commission essentially abrogated the role of advisory decision-maker. At the October 4, 2000 hearing, counsel for the Plan Commission warned that the Plan Commission's position on appeal could be adversely affected if it demonstrated its ability to reach a decision. Thereafter, no decision ensued.

■ In the face of repeated delays, and apparent reluctance on the part of the Plan Commission to reach a decision and certify its recommendation to the Board of Commissioners, the trial court ordered the Plan Commission to certify a "no recommendation" decision to the Board of Commissioners. However, the trial court did not mandate either approval or disapproval of the petition, and thus offered no opinion on the merits of The Lewis Group's petition. Accordingly, the trial court did not substitute its judgment for that of the Plan Commission. *See M & M Bus Co. v. Muncie Comm. School Corp.,* 627 N.E.2d 862 (Ind.Ct.App.1994). "A court may not substitute its judgment for that of an administrative body upon matters that are subjective in nature." *Id.* at 865.

The effect of the trial court's order is that the Board of Commissioners, the legislative body ultimately responsible for a rezoning decision in Boone County, will be able to address the merits of the zone map amendment petition on an expeditious basis, clearly the intent of the legislature in the enactment of the Local Plan and Zoning Act, which assigns the Plan Commission a preliminary and advisory role. Under the circumstances surrounding the inability of the Plan Commission to timely reach a recommendation, we do not conclude that the trial court exceeded its jurisdiction and usurped the role of the Plan Commission.

Affirmed.

MATHIAS, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part.

I agree with the majority that IND.CODE § 36-7-4-608(b) requires the Plan Commission to hold a hearing within sixty days on a petition to amend a zoning map. I also agree that the Plan Commission failed to hold such a hearing within sixty days and that the trial court had the authority to order the Plan Commission to comply with the statute.[5] However, I believe the trial court overstepped its bounds by requiring the Plan Commission to deliberate and make a recommendation within thirty days of the hearing. When the trial court mandated that a "no recommendation" be forwarded, it substituted its judgment for that of the Plan Commission's.

As the majority notes, I.C. § 36-7-4-608(b) does not impose a time limit on the Plan Commission's deliberation. *See* Op.

---

5. The Plan Commission does not dispute that the trial court had authority to mandate the holding of the hearing.

at 580. The statute requires only that the Plan Commission hold a hearing within sixty days of receiving a petition; and, then, once a recommendation is reached, the Plan Commission has ten days to certify the proposal to the legislative body. Moreover, as the majority notes, the statute allows the Plan Commission to continue the hearing from " 'time to time.' " *See* Op. at 580 (quoting I.C. § 36–7–4–604(b)(8)). In absence of a statutory command to deliberate and make a recommendation within a certain time frame, the Plan Commission had no clear legal duty to make a recommendation within thirty days of the hearing. Because the Plan Commission had no clear legal duty to deliberate and make a decision within thirty days of the hearing, the trial court lacked authority to mandate a recommendation. *See Knutson v. State ex rel. Seberger,* 239 Ind. 656, 659, 157 N.E.2d 469, 471 (1959) (3–2 decision) ("[P]ublic officials, boards, and commissions may be mandated to perform ministerial acts where there is clear legal duty to perform such acts."). Where there is no clear legal duty to act, a government decisionmaker's task is described as discretionary. *Id.* A court may not compel the performance of a discretionary act. *Id.*

Though the statute imposes no clear legal duty on the Plan Commission to deliberate within a certain time frame, Indiana caselaw compels such action under limited circumstances. First, the Plan Commission may not " 'delay a decision indefinitely when all material facts bearing upon the decision have either been supplied or have been admitted as unattainable.' " *Tippecanoe County Area Plan Comm'n v. Sheffield Developers Inc.,* 181 Ind.App. 586, 593, 394 N.E.2d 176, 181 (1979) (involving plat approval) (quoting *Ind. State Highway Comm'n v. Zehner,* 174 Ind.App. 176, 181, 366 N.E.2d 697, 700 (1977)). Second, the Plan Commission may not "draw out" the decisionmaking process "as long as possible by citing new and different reasons" for continued study. *Id.* at 598, 394 N.E.2d at 184. Rather, the Plan Commission must "list *all* reasons" for continued study "at the *first* reasonable opportunity; it [may not] raise them one at a time and thereby force" The Lewis Group to amend and resubmit its petition continually. *Id.* at 600, 394 N.E.2d at 185 (emphases in original). Under these circumstances, the Plan Commission's task can be said to have lost its discretionary character and to have become ministerial.

These circumstances are not present here. First, The Lewis Group has made no showing that all the material facts have been supplied or are unattainable. According to IND.CODE § 36–7–4–603, the Plan Commission "shall pay reasonable regard to:"

(1) the comprehensive plan;

(2) current conditions and the character of current structures and uses in each district;

(3) the most desirable use for the which the land in each district is adapted;

(4) the conservation of property values throughout the jurisdiction; and

(5) responsible development and growth.

After the Plan Commission heard The Lewis Group's petition on September 6, 2000, it determined that additional studies were needed to make an informed recommendation to the Commissioners. The Plan Commission, tabling the decision for sixty days, requested a property value assessment, environmental impact statement, report on compatibility with adjacent areas in Marion County, and cost studies from utility and emergency service providers. R. at 135; 165–66. These requests reasonably correspond to the factors the Plan

Commission is statutorily commanded to consider.

Second, The Lewis Group has not shown that the Plan Commission is "drawing out" the process with needless, piecemeal delays. The Plan Commission has held only one hearing on the matter, at which it requested five studies. So far, its multiple requests comply with *Sheffield's* charge to bring up all possible reasons for disfavor or delay at the earliest opportunity. While the Plan Commission's attorney cautioned against rendering any recommendation at the September 6 meeting, because of the status of an appeal, at least three out of the five members initially voted to submit an unfavorable recommendation.[6] Assuming the Commissioners pay any heed to a Plan Commission recommendation, The Lewis Group stands to benefit from the continued study, as long as that continued study is not needlessly prolonged.

Zoning issues often involve large numbers of interested parties, a complex balancing of costs against benefits, and high emotion. Courts, to be sure, are no strangers to those conditions. However, where the legislature has placed the burden of deciding zoning issues on experienced and directly accountable decision-makers, courts should be reluctant to enter the fray to "expedite" the process. While the trial court correctly ordered that a hearing be held, The Lewis Group has failed to show that the trial court's order to forward and certify the petition with a "no recommendation" was justified.

---

6. At least four votes are required to forward a   recommendation to the Commissioners.